Larry SLOMAN, Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE,**
**Defendant.**

**No. 92 Civ. 4982 (MBM).**

United States District Court,
S.D. New York.

May 4, 1993.

James H. Lesar, Washington, DC, for plaintiff.

Robert Hayes, Acting U.S. Atty., S.D.N.Y. and David A. Koenigsberg, Asst. U.S. Atty., New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff brings this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1988), challenging agency denials of FOIA and fee waiver requests. Defendant moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. Both parties also cross-move for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons set forth below, part of defendant's motion to dismiss for lack of subject matter jurisdiction, and part of its motion for summary judgment, are granted, and the complaint is dismissed.

## I.

Plaintiff is an author under contract with Doubleday to publish a book about Abbie Hoffman, a political activist during the 1960s. (Complaint Ex. 1) He requested information about Hoffman from the FBI and the Executive Office for United States Attorneys (EOUSA) pursuant to the Freedom of Information Act. (Complaint ¶¶ 5, 14, 19, 24, 29, 34, 38, 42, 47, 52)

### A. FBI

On March 10, 1990 plaintiff submitted a request pursuant to FOIA to FBI metropolitan field offices located in Albany, Boston, Chicago, Jackson, New York City, Newark, Philadelphia, San Francisco, and Washington. (Def.Mem.Ex. B–1, C–1, D–1, E–1, F–1, G–1, H–1, I–1, J–1) As a representative of the news media, plaintiff asked for a waiver of search and duplication fees in excess of $50.00 per request because the information sought was "likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in his commercial interest." (*Id.*) Plaintiff also sought expedited treatment of his requests because he faced publishing deadlines. (*Id.*)

Plaintiff requested information that was kept in records maintained at FBI headquarters and the various field offices. FBI headquarters denied plaintiff's fee waiver request for 7,501 previously processed pages because the Hoffman records had been "previously processed under FOIA" and released to Hoffman, who was an author who "had the ability to put [the information] in the public domain." The FBI asserted that "additional disclosure of the same information [which is readily available in the public reading room] will not add to the public's understanding." (Def.Mem.Ex. K–1) Plaintiff appealed the FBI denial on December 18, 1990. The Department of Justice's Office of Information and Privacy ("OIP") denied that appeal on December 18, 1990, reasoning that the release of the previously processed information would not contribute significantly to public

understanding of government operations because the information was already in the public domain. (Bolthouse Decl.Ex. K–4). In addition to the release of the information to Hoffman himself, OIP wrote that:

a portion of the Hoffman material has been released to a well-known syndicated columnist. Release of this same information to [plaintiff] would not contribute to public understanding of government operations or activities as nothing new would be added to the public record. Furthermore, the previously processed records on Mr. Hoffman are available for inspection in the public reading room at the Federal Bureau of Investigation in Washington, D.C., from where it has been widely distributed.

(*Id.*)

Various FBI field offices recovered the Hoffman records and notified plaintiff that those records were forwarded to FBI headquarters ("headquarters") and would be processed after headquarters properly assessed, and plaintiff paid, the search and duplication fees. Headquarters also denied plaintiff's fee waiver request for the field office records because those records substantially duplicated the information contained in the previously processed package which was already in the public domain. (Complaint Ex. 33, FBI letter Feb. 18, 1992, and Bolthouse Decl. ¶¶ 8–9, 31, 32) Finally, the FBI notified plaintiff that the records would not be processed until he notified headquarters that he would pay approximately $2,900 for the estimated 29,000 pages of documents. (Pl.Mem. at 5) Plaintiff appealed the denial of his fee waiver request, challenging the FBI assertion that the field office records were largely the same as the previously processed package. (Def.Mem. K–6, Sloman letter March 14, 1992) The OIP affirmed the FBI decision on May 14, 1992. (Bolthouse Decl.Ex. K–4)

**B. EOUSA**

Plaintiff submitted his FOIA request to EOUSA on March 12, 1990. (Complaint Ex. 1) EOUSA acknowledged receipt of plaintiff's request, requested more information regarding which offices plaintiff thought maintained the Hoffman files, and advised him that the request would be addressed when reached for processing and that each request is handled in the order received. (Complaint Ex. 2, EOUSA letter March 22, 1990) Within days, EOUSA granted plaintiff's expedited treatment and fee waiver requests. (Complaint Ex. 4, EOUSA letter. March 27, 1990) Although EOUSA supplied 15 pages of various documents, five of which were partially redacted, defendant denied plaintiff access to many records pursuant to 5 U.S.C. 552(b)(6) and (7)(C) because release of these records would constitute an invasion of Hoffman's privacy, and 5 U.S.C. 552a(j)(2) because they were compiled in the course of a law enforcement investigation. (Complaint Ex. 6; Boseker Supp.Decl. ¶ 2(B)) Defendant also advised plaintiff that records from the Northern District of Illinois had been destroyed, and that no records were found in nine other offices. (Complaint Ex. 6, EOUSA letter Sept. 12, 1990) By letter dated September 12, EOUSA notified plaintiff that its decisions were final and that he could appeal the decision. Plaintiff did not appeal. (Boseker Decl. ¶ 5) Thereafter, plaintiff filed the complaint in this action, appealing the FBI and EOUSA decisions.

**II.**

■ Defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), because plaintiff failed to exhaust administrative remedies before seeking judicial review. "The court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Insurance Guaranty Assn.,* 896 F.2d 674, 678 (2d Cir.1990), (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1350, p. 548 (1969)).

■ Exhaustion of the prescribed administrative remedy is required in FOIA cases. *Dettman v. U.S. Dept. of Justice,* 802 F.2d 1472, 1476–77 (D.C.Cir.1986). Requiring litigants to exhaust their administrative remedies insures that there is no premature interruption of the administrative process and

that the administrative agency involved has an opportunity to correct its own errors. *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), *cited in McLaughlin v. NASD*, 733 F.Supp. 694, 696 (S.D.N.Y.1990).

FOIA specifically provides for an administrative appeal process following an agency's denial of a FOIA request. An agency must

> determine within ten days after the receipt of [a FOIA] request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefore, and of the right of such person to appeal to the head of the agency any adverse determination....

5 U.S.C. § 552(a)(6)(A) (1977). Plaintiff must exhaust the administrative remedy prescribed in FOIA before bringing an action in district court.

Plaintiff argues that he constructively exhausted his administrative remedy pursuant to 5 U.S.C. § 552(a)(6)(C). That section provides that a person is deemed to have exhausted his administrative remedy "if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(A). The agency must respond to a FOIA request within ten days of receipt of the request. 5 U.S.C. § 552(a)(6)(C). If the agency has not responded within ten days, then, under 5 U.S.C. § 552(a)(6)(C) the requester may bring suit.

However, "[a]n administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed. The ten-day constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request." *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57 (D.C.Cir.1990).

> Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency

responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required.

*Id.* at 61.

In the case at bar, plaintiff argues that he constructively exhausted his administrative remedies because EOUSA did not respond to his FOIA request within the ten days required by the statute. Plaintiff requested the information in a letter dated March 12, 1990. EOUSA provided plaintiff with an interim response on March 22, 1990, within the ten-day statutory period, and notified plaintiff that due to excessive volume his request would be handled in the order in which it was received. That response, in itself, has been held sufficient to offset the statutory ten-day requirement. *See Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C.Cir.1976) (holding that the district court properly granted an extension of time to the agency when the agency was processing the requests with due diligence on a first in, first out basis). On March 27, 1990 EOUSA notified plaintiff that his fee waiver and expedited treatment requests had been granted. Nevertheless, on September 12, 1990 EOUSA partially denied plaintiff's FOIA request pursuant to 5 U.S.C. § 552(b)(6) and § 552(j)(2) and notified plaintiff that the records he requested from the Northern District of Illinois had been destroyed. Defendant also stated that no other records had been located, and that plaintiff could appeal the decision to the Attorney General within 30 days.

"A response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision, and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." 5 U.S.C. § 552(a)(6)(A)(i); *Oglesby*, 920 F.2d at 65. Assuming an agency's initial response complies with these requirements, the FOIA requester must appeal to the head of the agency. EOUSA's response

was sufficient to require an administrative appeal. Plaintiff did not exhaust his administrative remedies. Therefore, his complaint as to the EOUSA decision is dismissed pursuant to 12(b)(1) for lack of subject matter jurisdiction.

### III.

■ This court may review an administrative FOIA decision *de novo*. 5 U.S.C. § 552(a)(4)(A) (1982 and Supp.1986). However, the court's review is limited to the record before the agency at the time the agency rendered its decision. *Id.* at § 552(a)(4)(A)(vii); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988). Plaintiff submitted his declaration, dated December 17, 1992, to be considered as part of the record by this court in its decision. Plaintiff's declaration was not part of the record before the agencies. Therefore, it will not be considered here.

Summary judgment will be granted if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comrs.*, 834 F.2d 54, 57 (2d Cir.1987); *Samsung America, Inc. v. M/T Ft. Producer*, 798 F.Supp. 184 (S.D.N.Y.1992). However, the mere existence of disputed issues of fact is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. "[S]ubstantive law will identify which facts are material." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The disputed factual issues must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

FOIA generally requires requesters to pay search fees and duplication costs. *See Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 153, 100 S.Ct. 960, 970, 63 L.Ed.2d 267 (1980). However, pursuant to congressional amendment, a two-pronged test was established to determine when those fees should be waived:

> Documents shall be furnished without charge or at a charge reduced ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A) (1982 and Supp. IV 1986); *Larson*, 843 F.2d at 1482–83; *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987). Thus the statute sets forth a two-pronged analysis to determine whether a fee waiver is appropriate.

■ The first prong of the test requires that the requested information be in the public interest and "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A). "Fee waivers or reductions are mandatory under § 552(a)(4)(A) only if the agency makes the requisite public interest finding." *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir. 1987). The requester bears "the initial burden of identifying the public interest to be served" by the release of information at no cost pursuant to FOIA. *McClellan*, 835 F.2d at 1285; *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir. 1987). Plaintiff stated in his request for the FBI records that the information sought was "likely to contribute significantly to public understanding of the operations or activities of government." (Complaint Ex. 7; Pl.Mem. at 4) Plaintiff does not state how the release of this information will contribute to public understanding of the operations or activities of the government. "If such conclusory

statements supported a fee waiver for this request, then similar statements could support fee waivers for even broader requests." *McClellan*, 835 F.2d at 1285. Although the circumstances at hand may provide some insight into how the public interest may be benefitted from the release of the information, merely quoting the statutory language does not satisfy the first prong of the test. Plaintiff has not identified the public interest that will be served by releasing this information with a fee waiver.

The first prong also requires that the requested information "contribute *significantly* to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii) (1982 and Supp. IV 1986) (emphasis added). Plaintiff has repeatedly stated his intention to use the information to write a book about Hoffman. Defendants do not challenge plaintiff's ability to disseminate the requested information to the public. Rather, FBI headquarters denied plaintiff's fee waiver request for the previously processed package, reasoning that the information cannot contribute *significantly* to the public understanding because it has been previously released to Hoffman, an author and lecturer, and to a syndicated columnist. Further, and even more important, it is available in the FBI headquarters' reading room where the public has access and has used the information extensively. (Def. Reply Mem. at 17) Defendant has demonstrated that the information is readily available.

"The disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be likely to contribute to [public] understanding, as nothing new would be added to the public record." 28 C.F.R. § 16.10 (1992). Defendant argues that the field office records substantially duplicate headquarters' previously processed package. "The public's understanding of the subject matter in question, as compared to the level of public understanding existing prior to the disclosure, must be likely to be enhanced by the disclosure to a significant extent." 28 C.F.R. § 16.10(d)(iv). Here, the government asserts that the information not previously released or readily available in FBI headquarters'

reading room has been "largely processed already" and therefore will not enhance the public understanding to a significant extent. (Def.Mem. at 19–20 and Bolthouse Decl. ¶¶ 9, 10, 32) There are no circumstances present here which undercut that reasoning. Accordingly, plaintiff is obligated to pay the fee for this information. However, should he show upon review of the documents that the information not previously released would contribute significantly to the public understanding, there is no reason why he cannot sue to have that fee refunded.

With respect to the second prong of the test, plaintiff asserts in his letter requests to the FBI that the information he seeks is "not primarily in [his] commercial interest" and that he represents the news media. (Pl. Mem. at 4) To be eligible for inclusion in the "news media" category, plaintiff must actively gather "information that is about current events or that would be of current interest to the public." 28 C.F.R. § 16.11(j)(8). Further, plaintiff must not be "seeking the records for a commercial use." *Id.* Information is commercial if the requester "seeks the information for a use or purpose that furthers the commercial, trade, or profit interests of the requester." 28 C.F.R. § 1610. Because plaintiff has failed to satisfy the first prong of the test, there is no need to determine whether plaintiff's proposed use smacks more of commerce than of news.

For the reasons set forth above, plaintiff's motion for summary judgment is denied, defendant's motion to dismiss pursuant to Rule 12(b)(1) Fed.R.Civ.P. is granted in respect to the EOUSA claim and defendant's cross-motion for summary judgment is granted in respect to the FBI claim. The complaint is dismissed.

SO ORDERED.