**Ellen SCHRECKER, Plaintiff,**

v.

**DEPARTMENT OF JUSTICE, Defendant.**

**Civil Action No. 95–0026 (RCL).**

United States District Court,
District of Columbia.

Aug. 6, 1997.

James H. Lesar, Washington, DC, for Plaintiff.

Eric H. Holder, Jr., U.S. Atty., Suzanne C. Nyland, Asst. U.S. Atty., Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This case is a Freedom of Information Act (FOIA) dispute. See 5 U.S.C. sec. 552 *et seq.* Before the court is plaintiff's Motion for Summary Judgment as to the Fee Waiver Issue. For the reasons set forth below, plaintiff's motion will be GRANTED.

Plaintiff submitted a FOIA request to the FBI for documents that related to the FBI's McCarthy Era investigations of two individuals: Clinton Jencks and Gerhart Eisler. Plaintiff requested a fee waiver as well. The FBI granted plaintiff a 100% fee waiver for plaintiff's Jencks request (No. 306,486). See Cmplt. at Exh. 19. In addition, the FBI granted plaintiff a 75% fee reduction for plaintiff's Eisler request (No. 306,485). *See* Def's Opp. to Pl's Motion for Summary Judgment at Exh. 1. It appears as if this dispute is over $ 378.70.[1] The FBI explained that it granted only a 75% reduction "because ap-

---

1. The record is not entirely clear as to the amount of money involved in this dispute. There is a copy of a check sent by plaintiff for $94.70. *See* Def's Opp. at Exh. 6. There are also a few references in the record about two other payments: (1) $84.70 on February 6, 1989, see Cmplt. at Exh. 5; and (2) $76.00 on April 5, 1991, *see* Moran's Decl. at 3; Def's Opp. at Exh. 2. Plaintiff also appears to owe the FBI $123.30 for the final installment of Eisler documents. The parties have failed to expressly state to the court the exact amount of this dispute.

proximately 25% of [the Eisler] records consisted of (1) materials that had already been released to journalists and academics capable of disseminating the materials' content to the public or (2) newspaper articles and other publicly available information." Def's Opp. at 3. Plaintiff argues that she is entitled to a waiver of the remaining 25% fee for the Eisler request because her request is beneficial to the public in that it will expose the operations or activities of the government.

■ This court must conduct a *de novo* review of the FBI's decision to grant only a 75% reduction. See 5 U.S.C. sec. 552(a)(4)(A)(vii); *see also Larson v. CIA*, 843 F.2d 1481 (D.C.Cir.1988). This review is limited to the record before the agency at the time of its decision.

■ The fee waiver standard is set forth by the FOIA. The requester must satisfy a two part test; she must show that "the information [ (1) ] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and [ (2) ] is not primarily in the commercial interest of the requester." 5 U.S.C. sec. 552(a)(4)(A)(iii); *see also Larson*, 843 F.2d at 1482–83. The requestor is assigned the burden of showing that the fee waiver standard has been met.

Plaintiff satisfies both prongs of this test. As to the first prong, plaintiff has demonstrated that her request is in the public interest. She holds a Ph.D. in History, is an Assistant Professor of History at Yeshiva University, and has a number of scholarly publications. *See* Cmplt. at Exh. 9. She seeks to obtain information from the FBI concerning their McCarthy Era investigations of two individuals: Clinton Jencks and Gerhart Eisler. Once obtained, she intends "to write a book for the general public about the government's internal security program during the 1940s and 1950s, the so-called McCarthy period." *Id.* Indeed, she has "signed a contract with Hill & Wang to pub-

lish the book." *Id.* The FBI does not challenge plaintiff's academic legitimacy or her ability to disseminate the information.[2] As to the second prong, the FBI concedes that the plaintiff is not seeking the information for commercial purposes. *See* Def's Opp. at 2.

■ these two prongs, while necessary, is not always sufficient to justify a fee waiver. The FBI can still deny a fee waiver based upon the requestor's inability to disseminate the information and/or the availability of the information in the "public domain." See 28 C.F.R. sec. 16.10(d). The issue in this case is whether 25% of the Eisler documents are within the "public domain."

The FBI argues that the fee waiver was properly denied because the information is repetitive and/or has already been released to others. The determination as to what is and what is not public domain is not clear cut. See 28 C.F.R. sec. 16.10(j) (definitions) (provides no definition for public domain); *see also Blakey v. Dept. of Justice*, 549 F.Supp. 362 (D.D.C.1982). In *Blakey*, the DOJ actually produced evidence that established the repetitive nature of a request that sought information on the Kennedy assassination, a popular topic. The request amounted to $5,197.70 in duplication fees in 1982. There, the defendant DOJ established that several other news organizations and an educational institution had copies of plaintiff's request. Moreover, the DOJ showed that the other requestors had in fact *paid* for their respective copies. In this case, the FBI has failed to produce such strong evidence of public access to these records.

The FBI is able to point to specific individuals that have seen or actually have copies of the 25%. These individuals apparently have "the ability and intent to disseminate the information to the public." Moran Decl. at 4. These individuals include "Peter Masley, a journalist and Washington Post Editor; Dr.

---

2. "The courts have consistently overturned agency denials of fee waivers when requestors have made a legitimate, objectively supportable showing of using the requested information for scholarly research into political and historical events." *See Ettlinger v. FBI*, 596 F.Supp. 867, 875–76

(D.Mass.1984) (discussing a survey of cases). Moreover, the courts reversed such agency denials of fee waivers even under the former standard of review: whether the agency action was arbitrary and capricious.

Peter Lubbe, a Harvard scholar who was writing a biography on Eisler's sister; and Daniel J. Mulvenna, a writer who reviewed the material in the FBI reading room." [3] *Id.* Despite this showing, this court does not find that the disputed 25% is in the public domain. *See, e.g., Carney v. Department of Justice,* 19 F.3d 807, 815 (2d Cir.1994) ("the mere fact that particular records have been released to other requestors does not mean that the information contained in the records is readily available to the public."). Rather, Moran's declaration simply seems to show that other individuals have seen the information and that it has been produced to some individuals for what may be unrelated research.

Accordingly, summary judgment will be GRANTED for plaintiff on the issue of the fee waiver. The defendant shall waive all copying fees and return to plaintiff any and all fees heretofore paid by her.

SO ORDERED.

---

3. The fact that some of the information is available in the FBI reading room does not necessarily render it public domain. In *Fitzgibbon v. Agency for Int'l Dev.,* 724 F.Supp. 1048 (D.D.C. 1989), the court acknowledged the difficulties of reading room access and the difficulty of actually working in a reading room.